UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESUS PARDO RUIZ (A-Number: 098-268-070),

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,

Respondent.

Case No.  1:26-cv-0976-DC-JDP

AMENDED FINDINGS AND RECOMMENDATIONS

Petitioner Jesus Pardo Ruiz entered the United States no later than 2009 and was detained by ICE in 2025.  Petitioner filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2241, claiming that he is statutorily entitled to a bond hearing.  Respondent moves to dismiss the amended petition on the basis that petitioner's detention is mandatory.  I recommended that respondent's motion be denied, the petition be granted, and petitioner be provided a bond hearing.  After my recommendations issued, petitioner and respondent submitted objections.  Accordingly, out of an abundance of caution, I withdraw my current findings and recommendations and, in their place, substitute the following findings and recommendations, while still recommending that that respondent's motion be denied, the petition be granted, and petitioner be provided a bond hearing.

**Background**

Petitioner "entered the United States without inspection no later than 2009."  ECF No. 11 at 1.  Petitioner is pursuing asylum.  *Id*. at 2.  He does not allege having any involvement with immigration authorities prior to his current detention.  On September 14, 2025, petitioner was

1

detained by ICE when he was released from Fresno County Jail after serving a sentence "for violating probation on a drunk driving conviction." *Id*. Petitioner was issued a Notice to Appear, which stated that he would be removed. ECF No. 12-1. Since his detention, petitioner has not been provided a bond hearing. ECF No. 11 at 6.

**Procedural History**

On February 4, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 2. The court granted petitioner's request on February 10, 2026, ECF No. 7, and appointed counsel appeared a week thereafter, ECF No. 8. On February 27, 2026, petitioner filed an amended petition. ECF No. 11. On March 3, 2026, respondent filed the instant motion. ECF No. 12. Petitioner filed an opposition two days thereafter. ECF No. 13.

On March 18, 2026, I issued findings and recommendations, concluding that the petition should be granted and that petitioner should be provided a bond hearing. ECF No. 14. On March 25, 2026, petitioner filed objections, arguing that "the record should be clarified" regarding the discussion of petitioner's criminal history. *See* ECF No. 16. at 1; *infra* at 7. That same day, respondent also filed objections, reiterating the same arguments stated in "previously filed pleadings." ECF No. 15.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a) and that, consequently, he should be provided a bond hearing.[1] ECF No. 11 at 6-8. Respondent counters that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2). ECF No. 12 at 1-2. I address this claim below.[2]

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains that

---

[1] Petitioner argues that he is an eligible member of the class in *Bautista v. Santacruz*, which includes "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *See* No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025).

[2] Because the petition should be granted on the statutory basis alone, I find it unnecessary to address petitioner's other claims alleging violations of his Fifth Amendment due process rights by being denied a bond hearing and by being deprived of medical care. *See* ECF No. 11 at 8-10. It bears mention, however, that petitioner would not succeed on these claims. First, there is no evidence or allegation that petitioner was previously released on his own recognizance such that he had a protected liberty interest at the time he was detained by ICE. Second, his inadequate medical care claim is not proper in a habeas petition because it concerns the conditions of his confinement; instead, this claim arises under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Shook v. Apker*, 472 F. App'x 702 (9th Cir. 2012).

"all applicants for admission within the meaning of 8 U.S.C. 1225(a) are subject to mandatory detention under 8 U.S.C. 1225(b)." *See* ECF No. 12 at 1 n.1. Respondent urges the court to follow suit and find that petitioner is subject to mandatory detention under 1225(b)(2). *Id*. at 1-2. *Id*. Petitioner counters that he is subject to discretionary detention under section 1226(a). ECF No. 13 at 1-2.

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[3] 8 U.S.C. §§ 1226(a)(1)-(2).

The government urges the court to read section 1225(b)(2)(A) as using the terms "applicant for admission" and "seeking admission" interchangeably. *See* ECF No. 12 at 1-2. According to the government, all noncitizens who have not been admitted to the United States— i.e., "applicants for admission"—are necessarily "seeking admission" for purposes of section 1225(b)(2)(A). *Id*. Thus, the government contends, section 1225(b)(2)(A) applies to noncitizens who are "applicants for admission." *Id*.

---

[3] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

4

I find that the government's interpretation violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondent's theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy.  This interpretation collides squarely with the rule against surplusage.  *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025.  As noted, the government previously interpreted these provisions in the manner argued by petitioner.  Prior agency practice, though not dispositive, may inform this court's determination of law.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is.").  Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice."  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259  (W.D. Wash. 2025) ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide.  *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases); *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025).  The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ."  583 U.S. at 289, 297.  While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited.  *See Loper Bright*, 603 U.S. at 400.  Moreover, a district court in this Circuit recently vacated *Matter of Yajure Hurtado* "as contrary to law under the [Administrative Procedure Act]."  *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026).

6

Accordingly, because petitioner was detained in the interior of the United States, I find that his detention is governed by section 1226(a) and not, as respondent argues, by section 1225(b).  Given this finding, I must determine whether the appropriate relief is release or a bond hearing.  Petitioner requested a bond hearing in the amended petition, but he now argues that release is proper.  *See* ECF No. 11 at 11; ECF No. 13 at 2.  Respondent does not address this issue.  *See* ECF No. 12.

Courts in this Circuit have ordered both forms of relief.  Some courts have found that a bond hearing is the proper remedy.  *See Rodriguez*, 779 F. Supp. 3d at 1263 ("The Court finds that the specific harm Rodriguez alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Defendants from denying bond on the basis that he is detained under Section 1225(b)(2).").  Other courts have held that release is the proper remedy.  *See Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Under the circumstances presented, I find that a bond hearing is proper.  The harm suffered by petitioner—not receiving the bond hearing to which he is statutorily entitled—is remedied by providing that hearing.  *See Rodriguez*, 779 F. Supp. 3d at 1263.  Moreover, *Feng* is distinguishable from the instant action.  There, the court found "no indication . . . of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community."  *Feng*, 2026 WL 472635, at *1.  The same cannot be said here.  Petitioner has been charged with or convicted of driving under the influence on three occasions, spousal battery on two occasions, and inflicting corporal injury on a spouse.  *See* ECF No. 12-2.  While the charges for spousal battery and inflicting corporal injury on a spouse were subsequently dismissed, they are still relevant to the court's determination of the appropriate relief because evidence of the underlying allegations may be introduced at petitioner's bond hearing.  *See id*. at 3-5.

The regulations provide that "[t]he determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d). Accordingly, the Court of Appeals rejected the "argument that [the petitioner's] due process rights were violated when the IJ admitted his unauthenticated RAP sheet into evidence" because the "Federal Rules of Evidence do not apply strictly in immigration removal proceedings" and "regulations delineating the rules of procedure for bond determinations in immigration court specify that an immigration judge may rely upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."[4] *Singh v. Holder*, 638 F.3d 1196, 1209-10 (9th Cir. 2011) (citing 8 C.F.R. § 1003.19(d)), *abrogated on other grounds as recognized* by *Rodriguez*, 53 F.4th 1189. The Board of Immigration Appeals similarly has held that "[w]hen an alien's conduct results in his having had contact with the criminal justice system or being placed in criminal proceedings, the nature of those contacts and the stage to which those proceedings have progressed should be taken into account and weighed accordingly." *Matter of Thomas*, 21 I. & N. Dec. 20, 24 (BIA 1995).

District courts have found that dismissed charges "are deemed relevant evidence regarding a determination of the potential danger [the petitioner] poses to the community." *See Flores-Delgado v. Lynch*, No. 15-cv-1273-PHX-JAT, 2016 WL 2865872, at *7 (D. Ariz. May 17, 2016) (citing *Alarcon-Serrano v. I.N.S.*, 220 F.3d 1116, 1119 (9th Cir. 2000)). However, courts have found that an IJ errs where "the untested criminal allegations needed corroboration by other evidence along with a corresponding assessment of probative value and weight." *See Fuentes Reyes v. Wolf*, No. 19-cv-2086-GMN-EJY, 2020 WL 2308075, at *10 (D. Nev. May 8, 2020).

---

[4] Elsewhere, the Court of Appeals held that "[t]he fact of arrest, insofar as it bears upon whether an alien might have engaged in underlying conduct" is relevant in determining whether a noncitizen is entitled to discretionary relief from deportation. *Paredes-Urrestarazu v. I.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994). Additionally, the Court of Appeals cited with approval another circuit's holding that "[e]vidence of an alien's conduct, without a conviction, may be considered in denying the discretionary relief of voluntary departure." *See Villanueva-Franco v. I.N.S.*, 802 F.2d 327, 330 (9th Cir. 1986) (citing *Parcham v. I.N.S.*, 769 F.2d 1001, 1005 (4th Cir. 1985)).

Accordingly, in addition to petitioner's convictions for driving under the influence, the government may introduce the allegations underlying the dismissed charges at petitioner's bond hearing.  Thus, the government has presented a prima facie case that petitioner could be found to be a danger to the community or a flight risk.

While the government might not carry its burden at the bond hearing, petitioner's criminal history, including the dismissed charges, supports the finding that "due process is satisfied if Petitioner is provided with a post-deprivation bond hearing within five days."  *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M.*, 2025 WL 2938808, at *15-16).

**Conclusion**

Accordingly, it is hereby ORDERED that the findings and recommendations at ECF No. 14 are VACATED and WITHDRAWN.  The ones in this filing are substituted, and it is hereby RECOMMENDED that:

1. The first amended petition for writ of habeas corpus, ECF No. 11, be GRANTED.

2. Petitioner (A-Number: 098-268-070) be provided a bond hearing within five days of the date of the court's order.  At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. Respondent's motion to dismiss, ECF No. 12, be DENIED.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed

within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 3, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE